## BUNTE v. SCHUMANN.

### (Supreme Court, Appellate Term. March 21, 1905.)

1. **LOAN OF STOCK—AGREED VALUATION.**

   Where defendant loaned plaintiff certain corporate stock, plaintiff agreeing to pay interest on the stock at a certain valuation, this valuation was only for the purpose of computing interest, and on return of the stock defendant was not entitled to the difference between its market value at that time and the agreed valuation.

2. **TENDER—UNCERTIFIED CHECK.**

   A tender of an uncertified check is sufficient if it is not objected to on the ground that it is uncertified.

3. **CORPORATE STOCK—MARKET PRICE—EVIDENCE—NEWSPAPER REPORT.**

   The market price of corporate stock cannot be established by the testimony of a witness who had no knowledge of the subject except that derived from a newspaper which was not produced.

4. **SAME.**

   A newspaper report of the market price of corporate stock is not admissible to prove the price of the stock unless it is shown how the report is made up.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by John J. Bunte against Frederick Schumann. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before SCOTT, O'GORMAN, and BLANCHARD, JJ.

Calvin D. Van Name, for appellant.
Louis Wendel, Jr., for respondent.

SCOTT, J. In this action the plaintiff has recovered a judgment for damages for conversion of certain stock, although, as the evidence shows, the conversion charged was merely technical, and involved no actual or intended fraud on defendant's part. Indeed, the whole controversy should have been avoided, and would have been had not the defendant gathered an erroneous view as to his rights and liabilities. The plaintiff is a broker and dealer in stocks. The defendant is described as a musician, and has apparently but little practical knowledge of or experience in business affairs. On

April 2, 1904, plaintiff and defendant entered into a written contract, as follows:

"New York, April 2nd, 1904.

"In consideration of one dollar ($1.00) in hand paid receipt of which is hereby acknowledged, I hereby loan to Mr. John J. Bunte one hundred and fifty (150) shares of the Twentieth Century Mining Co.  Limit stock for thirty days from date.  Said John J. Bunte agrees to return said one hundred and fifty (150) shares of Twentieth Century Mining Co. stock and pay for the loan of the same at the rate of ten per cent. per annum at a valuation of $2.50 a share for the aforesaid 150 shares of stock.

"John J. Bunte has deposited as security for the above with Frederick Schumann first party to this agreement, certificate #12457 for 100 shares and #12412 for 100 shares of Portland Gold Mining Co. stock which are to be returned when 150 shares of Twentieth Century stock are delivered to said Frederick Schumann and interest on the loan of the same has been paid.

"Said John J. Bunte also agrees to give said Frederick Schumann as a premium 1000 shares of stock of the International Perfect Electrical Supply Co. at the time that this contract terminates."

The time for the return of the loaned stock was twice extended by agreement, and some time after the expiration of the last extension plaintiff wrote to defendant to call at his office and receive back his stock.  Defendant did not call, and on September 10th, in the evening, plaintiff called at defendant's residence, and tendered him certificates for 150 shares of Twentieth Century Mining Company's stock, and a certificate for 1,000 shares of International Perfect Electrical Supply Company stock, and an uncertified check for $18.75, and demanded the return of the 200 shares of the Portland Gold Mining Company stock.  With this demand defendant could not at the moment comply, because he had left the stock with his lawyer, with a view to adjusting the differences that had arisen with plaintiff.  Thereupon this action was begun for the alleged conversion of the Portland Gold Mining Company's stock.  Upon the trial the defendant seems to have somewhat misapprehended the effect of the written contract.  It was persistently claimed on his behalf that the parties had agreed upon the price of $2.50 per share as the value of the loaned Twentieth Century Mining Company's stock, and that, since that had depreciated in value, he should be allowed to counterclaim the difference between the agreed price and the present price.  In this, as we consider, he was in error.  It appears quite plainly upon the face of the contract that the arbitrary value of $2.50 per share was fixed merely as a basis upon which to calculate the 10 per cent. which was to be paid as compensation for the use of the stock.  The contract was for the loan of certain stock, and the defendant's right was to receive back the same stock which he had loaned; not the identical certificates, but valid certificates for an equivalent number of shares, for the evidence tends to show that when defendant consented to an extension of the contract he knew that plaintiff had parted with the identical certificates which had been loaned.  Therefore, when plaintiff offered back equivalent certificates, he had done all that he was required to do.  The tender, assuming it to have been made as plaintiff testifies, was sufficient, for a tender of even an uncertified check

is sufficient if not objected to at the time on that ground. At the trial the plaintiff renewed the tender of the borrowed stock, and the Electrical Supply Company stock agreed to be given as a premium, and the sum agreed to be given as compensation, and twice offered to accept back the Portland Gold Mining Company's stock, which was in court in possession of defendant or his counsel. This offer was declined upon the unsubstantial ground that defendant was entitled to damages for the supposed depreciation in value of the Twentieth Century Mining Company's stock. Under these circumstances there was nothing left for the court except to award judgment for plaintiff, if the value of the Portland Gold Mining Company stock was properly proven. At this point, however, the proof failed. The only evidence was that of plaintiff himself, who undertook to state the market price, but his cross-examination shows that he had no knowledge on the subject, and derived the information on which he based his valuation on something he had read in a daily newspaper; but the paper itself was not produced, nor was any evidence given as to how the reports in the newspaper were made up, or from what information they were compiled; consequently no proper foundation was laid for the use of the newspaper report as evidence, even if the paper itself had been produced. Whelan v. Lynch, 60 N. Y. 469, 19 Am. Rep. 202. For this failure of proof as to the value of the stock claimed to have been converted it will be necessary to reverse the judgment, and it is to be hoped that, since both parties are in a position to carry out the contract according to its terms, further litigation may be avoided.

Some question is made by the appellant as to the sufficiency of the tender by plaintiff as a foundation to a claim of conversion, but it is not necessary to examine that question on this appeal.

